IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TREVOR WILLIAMS, §
§
        Plaintiff, §
§ Civil Action No. 3:05-CV-1383-D
VS. §
§
REMINGTON ARMS COMPANY, INC. §
§
        Defendant. §

MEMORANDUM OPINION
AND ORDER

    This is a products liability lawsuit against a rifle manufacturer arising from an accidental shooting. Defendant moves for summary judgment, contending that plaintiff lacks admissible expert opinion evidence that the alleged design defect caused the rifle to discharge, and that without sufficient evidence of causation, plaintiff's claim fails. The court concludes that expert testimony of causation is not needed in the context of this case and denies the motion. Plaintiff has filed a motion for pre-admission of other similar incidents evidence, or, alternatively, motion requesting evidentiary hearing. The court grants the motion in part (to the extent that it will convene a hearing), and it denies the motion in part (to the extent that it concludes that certain of the evidence is inadmissible on the grounds on which plaintiff relies). The court also raises *sua sponte* the need for defendant to reexamine the numerous motions in limine that it has recently filed for compliance with the court's trial setting order in this case.

Plaintiff Trevor Williams ("Williams"), his friend, Matthew Hershey ("Hershey"), and three others decided to hunt coyote.[1] Hershey brought a Remington Model 710 30-06 caliber bolt-action rifle manufactured by defendant Remington Arms Company, Inc. ("Remington"). As the group was preparing to depart for the hunt, Hershey loaded the rifle using a detachable ammunition magazine. He retracted the bolt and then pushed it forward to load a round from the magazine into the rifle chamber. According to Hershey, although he did not pull the trigger, as he closed the bolt by pushing the bolt handle forward and down, the rifle inadvertently discharged, striking Williams in the hip at close range. Williams suffered serious injuries.

Williams brings this products liability action against Remington, alleging that the rifle is defectively designed because it has a propensity to discharge without pulling the trigger. To establish this claim, Williams relies on the expert testimony of John T. Butters ("Butters") and Jack Belk.[2] They essentially opine

---

[1]The court recounts the evidence in a light favorable to plaintiff as the summary judgment nonmovant and draws all reasonable inferences in his favor. *E.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000)).

[2]Remington moves to strike the affidavits of Williams' experts "to the extent that the affidavits . . . . provide new data or opinions beyond their reports or depositions," but it identifies only one apparent discrepancy. Because the court is not relying on

that the rifle uses an internal component——a connector——that floats on top of the trigger body inside the firearm, but is not bound to it. When the trigger is pulled, the connector is pushed forward, allowing the sear to fall and fire the rifle. Because the connector is not bound to the trigger, the connector separates from the trigger body several times during the recoil action after each firing of the rifle, creating a gap between the two parts. Any dirt, debris, or manufacturing scrap can then become lodged in the space created between the connector and the trigger, preventing the connector from returning to its original position. This results in "precipitous engagement" of the connector and sear——a condition that causes the rifle to fire, without pulling the trigger, when it is jarred or the bolt is closed.

This defect theory is based on high-speed video footage that demonstrates the separation of the connector and trigger body, personal examination of the firearm, evidence that many other customers have experienced involuntary discharge of this rifle model, and tests performed for the purpose of confirming that debris between the connector and trigger can result in precipitous engagement. Williams' experts have also reviewed the deposition testimony of several customers who reported similar unintended discharges, internal Remington documents purportedly acknowledging

---

the challenged part of the affidavit as a basis for its decision, it denies as moot Remington's request to strike the affidavits.

the problem with the trigger connector (including a 1994 document that contemplated recalling a rifle with the same trigger assembly), and a 2002 change in design of the Remington trigger assembly that apparently eliminated the alleged defect.

To demonstrate how debris would cause the rifle to misfire, the experts milled away the trigger housing assembly to expose the trigger and connector. They then inserted precision gage pins (tiny pieces of metal) at various points between the trigger and connector, the size and placement of which were designed to duplicate the effect of environmental contaminants. With the debris in place and the rifle cocked, the experts found that the firearm would discharge when the bolt handle was touched, even if the trigger was not touched.

Remington moves for summary judgment. Williams opposes the motion.

II

A

For purposes of its motion, Remington does not challenge Williams' experts' design defect opinion under Fed. R. Evid. 702 or *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587 (1993).[3] "Rather, Remington's summary judgment motion is based on

_____

[3]In a footnote, Remington states that it "reserves its right to challenge, if necessary, the design defect opinion of plaintiff's liability experts in motion *in limine*." D. Br. 22 n.15. Remington has no such "right," however. In the court's February 10, 2006 trial setting order, it specifically addressed

causation grounds, *i.e.*, that plaintiff and his liability experts have no reliable basis for their opinion that the alleged design defect was a producing cause of the plaintiff's injuries in this case." D. Br. 22 n.15. Remington maintains that Williams cannot satisfy the essential element of causation[4] because proof of causation is a technical matter that is beyond the jury's common understanding and therefore requires competent expert testimony

---

motions in limine, stating, in relevant part that "[m]otions in limine must [not] include . . . issues presented in order to obtain substantive rulings that should have been requested in advance of trial by appropriate motion." Feb. 10, 2006 Order 4. *See also infra* at § IV (addressing Remington's motions in limine filed January 18, 2008).

[4]In a products liability case, the plaintiff must prove that the "defective design of the product was a producing cause of the personal injury[.]" Tex. Civ. Prac. & Rem. Code Ann. § 82.006 (Vernon 2005). In *Ford Motor Co. v. Ledesma*, ___ S.W.3d ___, 2007 WL 4465732 (Tex. Dec. 21, 2007), the Texas Supreme Court clarified how the concept of "producing cause" should be defined in a jury charge.

> Defining producing cause as being a substantial factor in bringing about an injury, and without which the injury would not have occurred, is easily understood and conveys the essential components of producing cause that (1) the cause must be a substantial cause of the event in issue and (2) it must be a but-for cause, namely one without which the event would not have occurred.

*Id.* at *10. It is also correct to instruct the jury "that there may be more than one producing cause of an event." *Id.*

Although Remington's motion is framed in terms of *producing cause*, Williams also brings a negligence claim that is governed by a *proximate* cause standard of causation. This omission from Remington's motion does not, however, affect the disposition of this motion.

under Texas law.  Relying on Rules 702 and 703 and *Daubert*,
Remington posits that the expert testimony that Williams offers to
establish that the design defect was a producing cause of his
injuries is unreliable and must be excluded.  Remington contends
that without sufficient evidence to satisfy the essential element
of causation, Williams' products liability claim fails.[5]
Remington's overarching contention is that Williams' experts'
opinion——that, during normal use and functioning of the rifle,
unknown scrap or burrs caused a precipitous engagement of the
rifle's fire control mechanism, resulting in a rifle discharge when
Hershey closed the bolt, even though he did not pull the
trigger——is unreliable.

B

Although Williams offers responses for each component of
Remington's argument, Remington's summary judgment motion fails at
a fundamental level.  Because, for purposes of this motion,
Remington does not challenge Williams' experts' opinion that the
rifle's firing mechanism is defectively designed, and because no
other defect or explanation has been offered by Williams or
Remington for why the rifle would have unintentionally discharged
without a trigger pull, if in fact Hershey did not pull the

---

[5]The parties dispute whether there is admissible evidence,
besides Hershey's testimony, that he did not pull the trigger.
Considering the rationale for the court's decision, it need not
resolve this dispute.

trigger, the rifle could only have unintentionally discharged due to the design defect that the experts have identified. Expert testimony of causation is not required in these circumstances. If the jury finds at trial that the firing mechanism is defectively designed (which *will* require expert testimony but is uncontested for purposes of this summary judgment motion), and it also finds that Hershey did not pull the trigger (he simply closed the bolt by pushing the bolt handle forward and down), then absent any other explanation for why the rifle would have fired inadvertently (and there is none at this point), the only cause of the shooting is the defectively designed firing mechanism. The causation issue will therefore turn at trial on whether Hershey pulled the trigger or merely closed the bolt by pushing the bolt handle forward and down. A jury does not require expert testimony to decide this fact question.[6]

---

[6]In a footnote, Remington relies on testimony from the deposition of Peter Hancock ("Hancock"), Williams' rebuttal human factors expert, to the effect that Hershey's ability to recall what occurred during the shooting is itself unreliable due to the traumatic nature of the event and his role in accidentally shooting Williams. Remington maintains that in light of Hancock's testimony, Williams' experts cannot rule out the most reasonable alternative cause for the shooting: that Hershey pulled the trigger. Because expert testimony is not needed concerning causation, this deficiency, if any, is insufficient to support the entry of summary judgment. Moreover, even if expert testimony were needed, Hancock's testimony would present a fact question for the jury.

C

Nor is Remington correct in contending that expert evidence of causation *is* required. "Lay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition." *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984). "Expert testimony is required when an issue involves matters beyond jurors' common understanding." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006)(citing *Alexander v. Turtur & Assocs.,* 146 S.W.3d 113, 119-20 (Tex. 2004)). "Whether expert testimony is necessary to prove a matter or theory is a question of law. *Id.* (citing *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 89 (Tex. 2004)).

As explained above, if the jury finds that the rifle's firing mechanism is defectively designed, as Williams contends, then absent any other explanation for why the rifle would have discharged on the occasion in question, it fired either because Hershey pulled the trigger or because of the defective design. The jury does not need expert opinion evidence to assist it in deciding whether Hershey pulled the trigger. The jurors can use their general experience and common sense in making this decision. This assessment will include, *inter alia*, evaluating the credibility of Hershey and the other eyewitnesses, and assessing the other direct

and circumstantial evidence.  If the jury finds that Hershey pulled the trigger, Williams' claim fails.  Williams' injuries would have been caused by Hershey's accidentally shooting him.  But if the jury finds that Hershey did not pull the trigger, there is only one other alternative available as this case now stands: the rifle discharged because the firing mechanism is defectively designed.  Expert evidence of causation is not needed in these circumstances.

The principal cases that Remington cites are distinguishable.  In *Mack Trucks* the Texas Supreme Court affirmed the trial court's decision to exclude unreliable expert testimony regarding the cause of a post-accident fire that burned a tractor and its driver, and then to grant summary judgment for the defendant.  *Mack Trucks*, 206 S.W.3d at 575.  In that case a truck hauling a trailer of crude oil overturned as it rounded a curve, and the ensuing fire burned the trailer, its cargo, and the tractor.  The driver was badly burned and died from his injuries.  *Id.*  His decedents alleged, *inter alia*, that the tractor was defectively designed and manufactured because diesel fuel from the tractor's fuel system originated the fire that burned him.  They alleged that the tractor had design and manufacturing defects because the fuel system was unreasonably prone to fail and release diesel fuel in an environment conducive to ignition and fire, and the tractor had ignition sources, such as hot manifolds and electric batteries, in areas likely to contain released flammable fluids.  *Id.* at 575-76.  The defendant moved for

summary judgment on the ground, *inter alia*, that the plaintiffs could not present evidence that the alleged defects caused the post-accident fire. *Id.* at 576.

The plaintiffs' expert testified that the fire was started by the tractor's battery, which was located too near the fuel tanks, igniting the tractor's diesel fuel, which in turn ignited the trailer's cargo of crude oil. The trial court excluded this testimony. *Id.* at 576. The Texas Supreme Court held that this decision was not an abuse of discretion. *Id.* at 576, 581.

The court noted several problems with the opinion of the plaintiffs' expert witness. Among them were these: he lacked probative evidence that diesel fuel was released because of one of the asserted defects in the fuel system or that it was ignited by the battery system, *id.* at 580; the expert failed to set out any process by which he excluded other sources for ignition of the diesel fuel, such as mechanical sparks that could be generated when parts of a truck make contact with the pavement, or ignition of the cargo fuel, which in turn could have ignited the diesel fuel, *id.* at 581; he lacked a reliable basis to conclude that the fire originated with the fuel and battery systems instead of with the crude oil cargo, *id.*; and that he lacked a methodology that reliably supported his opinions concerning the tractor's alleged fuel system defects and battery system, *id.*

The court concluded that the plaintiffs otherwise lacked

sufficient evidence of causation. *Id.* at 582. Their theories regarding the fire's cause were all based on the premise that the tractor's fuel system was defective and unreasonably prone to fail and release flammable fluids in an environment conducive to ignition and fire, that the defects caused the release of diesel fuel, and that a defectively designed and placed ignition source caused released diesel fuel to ignite. The court held that, to survive summary judgment on their theory that a defect in the tractor's fuel system was the cause of the fire, the plaintiffs were required to present more than evidence of a fuel leak. They were required to present evidence that the diesel fuel leaked because of one or more of the alleged defects, and that the leak caused by the defect was the ignition point for the fire. *Id.* at 582. This proof required expert testimony on causation, because a lay juror's general experience and common knowledge would not extend to whether these types of design defects caused releases of diesel fuel during a rollover accident. *Id.* at 583. Nor would a lay juror's general experience and common knowledge extend to determining which of the fuel sources——diesel fuel from the tractor or crude oil from the tanker——would have first ignited, or to determining the source for the first ignition. Issues such as those regarding the fire's cause or causes presented matters beyond the general understanding and common knowledge of lay jurors. But because the plaintiffs' summary judgment evidence did not contain

proof that any of the possible sources of diesel fuel was more likely than any other, or more likely than the crude oil cargo, to have been the source of liquids that first caught fire, there was no evidence that the source was one of the alleged fuel system defects. *Id.*

The court also rejected the plaintiffs' reliance on allegations that several ignition sources were located in areas likely to contain diesel that would be released in a wreck, and expert testimony that an arced battery cable found in the tractor could possibly have ignited the fire. It held that testimony that the battery or its cable could possibly have ignited the fire was not evidence that it probably did so. The court noted that the expert who provided this testimony could not determine whether the cable arced before the fire was ignited or as it was being burned by an otherwise-ignited fire. As proof of what caused the fire, this evidence was speculative and insufficient to prevent summary judgment. *Id.* at 583. Nor could the plaintiffs avoid summary judgment based on circumstantial evidence suggesting that the fire quickly reached the driver. *Id.* at 584. Although this evidence was consistent with their theory that the fire originated with fuel from the tractor's diesel fuel system, it did not make it more likely than not that the battery or some other allegedly improperly located ignition source ignited diesel from the tractor, as opposed to other possible sources of ignition, such as the cargo of crude

oil.  *Id.*

*Mack Trucks* is distinguishable from the present case.  In *Mack Trucks* the plaintiffs' theory of causation made it necessary to prove that one defective aspect of the tractor (a defectively designed and manufactured fuel system) caused a single fuel source (diesel fuel from the tractor's fuel system) to be ignited due to another defective aspect of the tractor (a defectively designed and manufactured battery system), which in turn ignited the trailer's cargo of crude oil.  The plaintiffs could not establish with reasonable probability the causal relationship between the event and the condition because there were numerous variables that the plaintiffs lacked sufficient evidence to exclude: that the diesel fuel leaked for a reason other than due to one of the asserted defects in the fuel system; that there was a source for ignition of the diesel fuel other than the tractor's battery system; and that the fire originated with the crude oil cargo rather than with the tractor's fuel and battery systems.  And as a matter of law, the element of causation in *Mack Trucks* required expert testimony because "[a] lay juror's general experience and common knowledge do not extend to whether design defects such as those alleged in this case caused releases of diesel fuel during a rollover accident." "Nor would a lay juror's general experience and common knowledge extend to determining which of the fire triangle's fuel sources, diesel from the tractor or crude from the tanker, would have first

ignited, or the source for the first ignition." *Id.* at 583.

By contrast, the instant case contains no such variables and does not require expert testimony. As this case is framed, there are two possible causes of the accidental shooting of Williams: Hershey accidentally pulled the trigger, or the rifle's defectively designed firing mechanism caused it to discharge when Hershey pushed the bolt handle forward and down. Neither Remington nor Williams suggests any other cause for the rifle accidentally to discharge. Therefore, if at trial Williams can prove through expert evidence that the firing mechanism of the rifle is defectively designed, and he can prove through lay testimony and other lay evidence that Hershey did not pull the trigger, lay jurors can rely on their common sense and experience to find that the only other possibility——the design defect——caused the rifle to discharge and injure Williams.

*Nissan Motor Co. v. Armstrong,* 145 S.W.3d 131 (Tex. 2004), can also be distinguished. *Nissan* involved a products liability action arising from the unintended acceleration of an automobile. The plaintiff alleged that the automobile's throttle cable was defective, and she sought to prove her claim by relying, *inter alia*, on evidence of numerous other alleged incidents of unintended acceleration. The principal issue on appeal was whether the trial court had erroneously admitted evidence of other accidents.

In the part of the *Nissan* opinion that Remington highlights in

its briefing, the Texas Supreme Court cited prior cases in which it had held that it was not enough that a vehicle accelerated when claimants swore they had done nothing. *Id.* at 137. The court noted that it had consistently required competent expert testimony and objective proof that a defect caused the acceleration; that the courts of appeals had done the same, holding that liability cannot be based on unintended acceleration alone, on lay testimony regarding its cause, or on defects not confirmed by actual inspection; and that other courts had also done so. *Id.* The court noted that these requirements were not peculiar to unintended acceleration cases. *Id.* It pointed out that these requirements were especially compelling in these types of cases because, not only were there many potential causes (from floor mats to cruise control), but one of the most frequent causes (inadvertently stepping on the wrong pedal) was untraceable and unknown to the person who did it. It concluded, as in prior cases, that the mere occurrence of an unintended acceleration incident was no evidence that a vehicle was defective. And although it was up to the jury to decide what caused the plaintiff's accident, she had to present evidence that her car was defective, not just that other owners had experienced unintended acceleration. *Id.* at 137-38.

The present case is unlike *Nissan* in at least two materials respects. First, in *Nissan* the court was addressing not only how the absence of expert testimony affected the plaintiff's ability to

prove causation, but also her ability to prove that the car was in fact defective. Like other plaintiffs, she could not prove that her car was defective based only on sworn testimony that the vehicle had accelerated when she had done nothing. But Williams is not relying only on Hershey's testimony to claim that, because Hershey did not pull the trigger, the rifle's firing mechanism must have been defective or the rifle would not have discharged. And in any event, at the summary judgment stage Remington is not challenging the claim that the rifle firing mechanism is defectively designed.

Second, as in *Mack Trucks*, in *Nissan* "there [were] many potential causes" of the unintended acceleration: from floor mats, to cruise control, to inadvertently stepping on the wrong pedal. *Id.* at 137. It was therefore necessary for the plaintiff to adduce competent expert testimony and objective proof that a defect caused the acceleration. The plaintiff could not rely on the lay testimony of the driver. But in the present case, as the court has explained in distinguishing *Mack Trucks*, there are not several potential causes that expert testimony must necessarily exclude.

*Kallassy v. Cirrus Design Corp.*, 2006 WL 1489248 (N.D. Tex. May 30, 2006) (Godbey, J.), is also different from the present case. In *Kallassy* Judge Godbey granted summary judgment in a products liability action based on an absence of sufficient evidence to prove either defect or causation. *Id.* at *1. The

plaintiff alleged that the aircraft he flew was defective because it vibrated severely while being flown, causing him to sustain neurological injury to his hands and feet. Judge Godbey concluded that the plaintiff's defect and causation theories required expert testimony. *Id.* at *4 (defect) and *6 (causation). For various procedural and substantive reasons, the plaintiff lacked expert evidence of a product defect and of causation. Unlike *Kallassy*, in this case Williams *has* expert evidence of a design defect (and this element is not at issue at the summary judgment stage), and there is no need for him to present expert testimony on causation.

Finally, *Boss v. Nissan North America, Inc.*, 228 Fed. Appx. 331 (4th Cir. 2007) (per curam) (unpublished opinion), is also distinguishable. In *Boss* a passenger injured when a car overturned brought suit claiming, *inter alia*, that the car's power steering system was negligently designed. *Id.* at 332-33. The plaintiff intended to introduce expert testimony that the power steering system was defectively designed and that a particle lodged in the system's spool valve, causing a steering malfunction. *Id.* at 333. The district court disqualified the experts under *Daubert*. The Fourth Circuit affirmed, concluding that it was not an abuse of discretion to exclude the experts' testimony because it was neither reliable nor relevant. *Id.* at 337.

But in *Boss* the circuit court held that the plaintiff could not "establish a prima facie case of product liability without

expert testimony." *Id.* at 339. Once the expert testimony was excluded, the plaintiff could not prevail. In the present case, Williams has adduced expert testimony to support the claim that the rifle's firing mechanism is defective, and Remington does not challenge the defective design theory at the summary judgment stage. Furthermore, this court has held that Williams need not adduce expert testimony to prove causation in the context of this case. Therefore, unlike *Boss*, in this case Williams has (at least at this stage) adequate expert testimony to support his theory of design defect, and expert testimony on causation is unnecessary.

Although Remington appears in its briefing to track *Boss*'s reasoning to argue that expert testimony on causation *is* necessary and that Williams' experts' opinions are unreasonable, *Boss*'s conclusion that expert testimony was necessary was probably based on Maryland law.[7] This court applies Texas law in deciding whether expert testimony is required. *See Kallassy*, 2006 WL 1489248, at *3 ("Sitting in diversity, the Court is guided by Texas law in determining whether expert testimony is required to show defect in this case."). And the court has determined that, under Texas law and in the context of a case with limited possible causes (Hershey pulled the trigger or the rifle's fire control mechanism

---

[7]The opinion is not clear in this respect, but there is no indication that the court was applying the law of any other state when analyzing the plaintiff's claim against the automobile manufacturer.

precipitously engaged), Williams need not adduce expert testimony on causation.

Accordingly, Remington's motion for summary judgment is denied.

## III

The court now considers Williams' motion for pre-admission of evidence of other similar incidents or for an evidentiary hearing.

### A

Williams seeks a ruling pre-admitting the following evidence: (1) complaint letters by Remington customers who claim to have experienced unintended discharges of their rifles; (2) documents Remington produced in the course of investigating these complaints; (3) Remington letters responding to the complaints; (4) summaries and tabulations of the complaints maintained by Remington; and (5) live testimony by some of the complaining Remington customers. In his reply brief, he asks the court to admit (6) evidence of other lawsuits, verdicts, and settlements.

### B

Williams seeks to admit letters from Remington customers complaining that their rifles fired without a trigger pull. He intends by these letters to prove that Remington had notice of the alleged design defects.[8]  But it is clear that he seeks to prove

---

[8]Williams defines "notice" as including Remington's knowledge of such issues as foreseeability and the effect of the parties' duty to take certain action.  P. Mot. 22.

not only that customers complained of unintended discharges, but that these unintended discharges in fact occurred. There are two questions that must be addressed before this evidence can be admitted. First, is it relevant. Second, is the evidence itself in admissible form, i.e., not hearsay, or it falls within an exception to the hearsay rule.

"Evidence of similar accidents occurring under substantially similar circumstances and involving substantially similar components may be probative of defective design." *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1082-83 (5th Cir. 1986) (on rehearing). "Evidence of similar accidents might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, strength of a product, the standard of care, and causation." *Ramos v. Liberty Mut. Ins. Co.*, 615 F.2d 334, 338-39 (5th Cir. 1980), *clarified on denial of reh'g*, 620 F.2d 464 (5th Cir. 1980) (per curiam). "When evidence of other accidents or occurrences is offered for any purpose other than to show notice, the proponent of that evidence must show that the facts and circumstances of the other accidents or occurrences are 'closely similar' to the facts and circumstances at issue." *Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993) (per curiam). "[W]hen it is offered solely to show notice, the proponent of such evidence must establish reasonable similarity." *Id.* at 580 (citing

*Mills v. Beech Aircraft Corp., Inc.,* 886 F.2d 758, 762 (5th Cir. 1989)).

The court cannot determine based on the submissions alone whether the evidence that Williams seeks to offer meets the reasonable similarity test for notice or the substantial similarity test for all other purposes. The court will convene a hearing to address these questions.

But even assuming that the evidence is relevant, it must be introduced in an admissible form. "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c). Depending on the purpose for which the evidence is offered, Williams may be seeking to offer it for the truth of the matter asserted, in which event the evidence may be excludable as hearsay, absent an exception. *See* Rule 802. At the hearing, the court will determine whether the evidence that Williams seeks to offer is not only relevant but is also admissible, i.e., not hearsay, or it falls within an exception to the hearsay rule.

C

Williams next seeks to admit three categories of evidence: Remington business records that show its investigation of customer complaints, its response to the complaints, and summaries and tabulations of the frequency of customer complaints.

Because Williams asserts that this evidence is probative of defective design, causation, notice, conscious indifference, and impeachment of Remington's defense that Hershey must have pulled the trigger, he necessarily relies on the evidence to prove that the alleged misfires actually occurred. Although when offered for one of these purposes, this evidence is hearsay, Williams posits that it is admissible because the proof consists of party admissions and business records. *See* Rule 801(d)(2) (excluding admissions by party opponents from the definition of "hearsay"); Rule 803(6) ("business records" exception). The court disagrees that this evidence is admissible under either exception for the truth of the matter asserted.

These Remington business records do not appear to contain any admissions by Remington of a defective design or of causation. Remington merely acknowledges that it received the complaints, investigated them, and was unable to verify whether they were true. The only evidence that might be probative of defective design, causation, notice, conscious indifference, or impeachment is the customer complaints themselves. But when the complaints are offered to prove the truth of the matters asserted in the complaints, they are hearsay. Because the complaints and investigative files do not appear to contain Remington admissions,

they are not admissible for the truth under Rule 801(d)(2).[9]

Nor are they admissible for the truth on the ground that they are Remington business records, because they do not comply with all the requirements of Rule 803(6).  In particular, Williams has not shown that the person making the complaint was acting in the course of a regularly conducted business activity when he made the complaint.

This deficiency is illustrated by *Rowland v. American General Finance, Inc.*, 340 F.3d 187 (4th Cir. 2003).  In *Rowland* the court addressed the admissibility of a letter that a customer (Albert Terry ("Terry")) had written complaining about an employee of defendant American General Finance, Inc. ("American General").  Terry sent the letter to the Virginia State Corporation Commission, which in turn forwarded it to American General.  The Fourth Circuit held that because the Terry letter was introduced to prove the truth of the matter asserted, it was only admissible if a hearsay exception applied.  *Id*. at 194.  The circuit court explained that the supplier of the information must also have acted in the course of a regularly conducted business activity.

---

[9]Although the purpose for which Williams seeks to offer this evidence may affect the court's ruling or reasoning, it need not finally resolve this question now because it can adequately do so in the context of a hearing.

> To qualify for the business records exception, the document must be prepared by someone acting in the course of a regularly conducted business activity. If, however, *the supplier of the information does not act in the regular course, an essential link is broken;* the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail. Clearly, no one at American General, or the State Corporation Commission for that matter, prepared the Terry letter, let alone prepared it in the course of a regularly conducted business activity. Moreover, even if the letter could be considered part of a larger business record (*i.e.,* a record of customer complaints referred from the State Corporation Commission), this would present a double hearsay problem, which would still require that the Terry letter qualify under one of the exceptions or that American General demonstrate standard verification procedures for customer complaints. Nothing in the record supports either of these routes to admissibility.

*Id.* at 194-95 (citations and internal quotation marks omitted); *see also United States v. Baker*, 693 F.2d 183, 188 (D.C. Cir. 1982) ("[I]f the source of the information is an outsider, Rule 803(6) does not, by itself, permit the admission of the business record. The outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have."). For the business records exception of Rule 803(6) to apply, Williams must establish that *the supplier* of the information contained in the Remington records was also acting in the course of a regularly conducted business activity when he made the complaint.

It is not enough that Remington employees were themselves acting in the course of a regularly conducted business activity when they investigated the customer complaints, responded to the complaints, or summarized or tabulated the frequency of the customer complaints.

Although this evidence may not be admissible as a party admission or under the business records exception, it may be admissible for a limited purpose, including one that the court will examine as part of the hearing it has granted in § III(B) concerning customer complaints. Before such evidence is admitted, however, Williams must show that it meets the test of reasonable similarity, if offered for notice, or of substantial similarity if offered for any other purpose.

This ground for pre-admission is therefore denied in part (to the extent Williams contends it is admissible as a party admission or under the business records exception), and the court in part grants Williams a hearing on admissibility.

D

Williams seeks to pre-admit live or deposition testimony from unspecified customers who complain that their Model 700 or Model 710 rifle unintentionally discharged.

Before admitting into evidence testimony regarding prior shooting incidents, the court must determine whether the incidents meet the reasonable similarity test or the substantial similarity

test.  The court cannot do this without evaluating the proffered
testimony, and Williams has not identified the proposed witnesses.
The necessity of examining each particular witness is demonstrated
by Williams' own expert, who testified that each customer complaint
involved a different condition and circumstance, and it must be
examined on a case-by-case basis.  *See* D. Resp. App. 23-25
(testimony of Butters).  Williams' unsubstantiated assurances that
all customers in the complaining class experienced the same set of
substantially similar facts are insufficient grounds for pre-
admission of this evidence.

The court will include this component of Williams' request in
the hearing.

E

Finally, in his reply brief, Williams seeks pre-admission of
evidence of other lawsuits, verdicts, and settlements.  Although
the court will consider during the hearing the purposes for which
Williams seeks to offer this evidence, it has serious questions
about whether some or all of this evidence is admissible and, if
so, whether the court should in its discretion exclude the evidence
under Rule 403.  Even if Williams persuades the court that evidence
of *the filing of a lawsuit* is sufficiently similar to a customer
complaint that it should be admitted to the same extent,[10] proof of

_____

[10]The court is assuming *arguendo* that customer complaint
evidence will be admitted for at least one purpose at trial.

verdicts and settlements is altogether different in its potential for unfair prejudice, confusion of the issues, misleading the jury, or by considerations of the waste of time involved in re-litigating those cases in the context of this lawsuit. The court grants this aspect of Williams' motion to the extent he requests a hearing, but it will carefully scrutinize this evidence under Rule 403.

IV

Remington filed eight motions in limine on January 18, 2008. In the court's trial setting order, it specifically set out the requirements for filing such motions.

> Motions in limine must not be filed as a matter of course. If filed, counsel must file them with the court and serve them on the opposing party at least 14 days before the date of the trial setting. Responses must be filed with the court and served on the opposing party at least 7 days before the date of the trial setting. Replies to responses are not permitted except by leave of court.
>
> Motions in limine must be limited to matters that meet the following requirements: (1) the matter cannot adequately be raised by trial objection without prejudice to the moving party *and* (2) the prejudice of mentioning the matter in the presence of the jury cannot be cured by an instruction from the court. Motions in limine must include neither "standard" requests not tailored to a case-specific matter, nor issues presented in order to obtain substantive rulings that should have been requested in advance of trial by appropriate motion.

Feb. 10, 2006 Order 4. It is apparent from a preliminary reading of Remington's motions that they include grounds that directly

violate the court's order.  Accordingly, prior to the pretrial conference, Remington's counsel must reexamine the motions and be prepared to raise *only* the grounds that comply with the court's order.

*     *     *

Remington's May 23, 2007 motion for summary judgment is denied.  Williams' May 31, 2007 motion for pre-admission of other similar incidents evidence, or, alternatively, motion requesting evidentiary hearing is granted in part (to the extent that the court will convene a hearing) and denied in part.  The court will separately advise counsel of the date and parameters of the hearing.  Remington's counsel is directed to reexamine the motions in limine recently filed in this case to ensure that only the grounds that comply with the court's order are presented for a ruling at the pretrial conference.

**SO ORDERED**

January 28, 2008.

_Sidney A. Fitzwater_
SIDNEY A. FITZWATER
CHIEF JUDGE